**IN THE UNITED STATES DISTRICT COURT**
**FOR THE  NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**SHELBY DEAN SKAGGS,**

**Plaintiff,**

**v.**                                                                         **CIVIL ACTION NO. 3:20-CV-198**
                                                                                **(JUDGE KLEEH)**

**RUSSELL MASTON,**
**BETSY JIVIDEN,**
**WEFORD HEALTH RESOURCES,**
**DR. JAMES BEANE,**
**CARLA DEEM,**
**HANGAR ORTHOPEDIC, and**
**MARIE DOE,**

**Defendants.**

## REPORT AND RECOMMENDATION

### I.      INTRODUCTION

On October 13, 2020, the Plaintiff, acting pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983.  ECF No. 1.[1]  On March 4, 10, and 18, 2021, Defendants filed three separate motions to dismiss with accompanying memoranda of law.  ECF Nos. 22, 23, 24, 25, 32, 32-1.

This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C.§§ 1915(e) and 1915A.

### II.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff requires orthopedic care, including a leg brace and orthopedic shoes, following a leg injury he suffered in 1983 while working as a coal miner.  ECF No. 1-1 at

---

[1]  All ECF number cited herein are in 3:20-CV-198, unless otherwise noted.

5, 7 – 13.  As a result of that injury, Plaintiff's right leg is shorter than his left leg.  Id. at

13.  In his complaint, Plaintiff asserts that while he was incarcerated in the St. Marys

Correctional Center (St. Marys) in the Northern District of West Virginia, that: (1) Betsy

Jividen (Jividen) denied Plaintiff's grievance which sought a second medical opinion

about his leg and brace [ECF No. 1 at 7]; (2) Wexford Health Resources (Wexford) acted

with deliberate indifference to Plaintiff's serious medical needs related to his leg brace

and shoes [Id. at 8]; (3) Dr. James Beane (Beane), Plaintiff's treating physician at the

institution, acted with deliberate indifference to Plaintiff's serious medical needs [Id.]; (4)

Carla Deem (Deem), the Health Services Administrator, acted with deliberate indifference

to Plaintiff's serious medical needs when she examined his boots and brace which caused

Plaintiff pain and suffering [Id.]; and (5) Hanger Orthopedic (Hanger) acted with deliberate

indifference to Plaintiff's serious medical needs by failing to act after being informed by

Deem that Plaintiff's boot had no sole or brace and was "non functioning".[2]  [Id.].  Plaintiff

claims that he was injured "[b]y having to walk with one leg shorter than the other" and

asserts that he "hurts" in his back, head, legs and "all over", but the exact nature of

damages is unknown without proper medical treatment.  Id. at 9.

For relief, Plaintiff asks the Court to order that he: (1) be seen by another orthopedic

doctor; (2) be provided copies of his medical records without cost; (3) be compensated in

an unspecified amount for expenses incurred; (4) be compensated in an unspecified

---

[2]  Plaintiff's five claims for relief address Defendants Jividen, Wexford, Beane, Deem and Hanger.
In the portion of the Court-approved form to identify Defendants, Plaintiff identifies Marie Doe, a nurse at
St. Marys, as another Defendant, whom he claims "gave me new boots and brace and told me if there was
anything wrong with them that they would not send me out to get them fixed."  ECF No. 1 at 3 – 4.
Additionally, Plaintiff identified Russell Maston, warden, as a Defendant whom he claims told Plaintiff that
he would check on Plaintiff's boots and brace, although Plaintiff claims to have received no reply.  Id. at 4.
Plaintiff asserts that by his inaction Maston denied him medical care and was deliberately indifferent to his
need for medical care.  Id.

2

amount for pain and suffering; and (5) be given adequate medical services when needed. Id.

Attached to the complaint were several exhibits, and a seven-page handwritten document entitled, "Exhibit No. 4: Claim 1: Deliberate indifference to a serious medical need." ECF No. 1-1 at 7 – 13. Therein, Plaintiff claims that Beane ordered two pairs of boots with braces, the first on an unknown date, and the second "in early 2020". Id. at 8. After filing a grievance on April 6, 2020, Plaintiff asserts that Richardson called him to medical on June 10, 2020, and provided his new boots and brace. Id. at 9. Richardson asked Plaintiff to try them on and see if they fit. Id. Plaintiff states that he did so, and that he told Richardson the boots and brace fit. Id. Plaintiff asked Richardson not to throw away his old boots and brace, and signed and authorization for the new boots. Id. Plaintiff filed a second grievance on July 6, 2020, complaining that the boots and brace were defective. Id. at 4, 9. Plaintiff further claims that on August 17, 2020, he spoke to Deem about his boots and brace and that on August 20, 2020, Deem advised she had spoken with Hanger which requested she take photos and send the photos to Hanger, which Deem did. Id. at 12. On October 1, 2020, Plaintiff contends that he again saw Beane who reported medical staff were working with Hanger to get a corrected pair of boots and brace for Plaintiff. Id.

Defendants Beane, Deem, Marie Doe (Richardson)[3], and Wexford filed a motion to dismiss the complaint and memorandum in support thereof on March 4, 2021. ECF Nos. 22, 23. Therein, they assert that: (1) Plaintiff's failure to establish deliberate indifference

---

[3] In both the motion and the memorandum attached to the motion to dismiss, counsel identify the Defendant Doe as "Marie Richardson". ECF Nos. 22 at 1, 23 at 1. Plaintiff subsequently also identifies this Defendant as "Marie Richardson". ECF No. 36 at 3.

is a failure to state a claim upon which relief may be granted as to Beane, Deem and Richardson; (2) Plaintiff failed to demonstrate deliberate indifference and thus failed to state a claim upon which relief may be granted as to Wexford; and (3) Plaintiff failed to exhaust his administrative remedies as to Deem and Richardson.  ECF No. 23.

Defendant Hanger filed a separate motion to dismiss and memorandum of law on March 10, 2021.  ECF Nos. 24, 25.  Therein, Hanger argues that: (1) it should be dismissed from this action because Plaintiff failed to serve Hanger with a notice of claim and/or Screening Certificate of Merit as required by the West Virginia Medical Professional Liability Act (MLPA), W.Va. Code § 55-7B-6; and (2) Plaintiff's complaint fails to state a deliberate indifference claim upon which relief may be granted.  ECF No. 25.

Defendants Maston and Jividen ("the Administrative Defendants") filed a motion to dismiss and memorandum in support thereof on March 18, 2021.  ECF Nos. 32, 32-1.  The Administrative Defendants argue that: (1) Plaintiff has failed to state a claim upon which relief may be granted; (2) they are entitled to qualified immunity; and (3) they are entitled to sovereign immunity.  ECF No. 32-1.

Plaintiff filed a consolidated response to the motions to dismiss on April 1, 2021, along with twelve exhibits.  ECF Nos. 36, 36-1 through 36-12.  In his response, Plaintiff claimed that: (1) he endured cruel and unusual punishment when he received defective boots and brace, which were not properly or promptly repaired, which forced him to wear his old boots and brace which in turn caused Plaintiff pain and suffering; (2) that although Maston was aware of his defective boots and brace, Maston did nothing to correct the problem, which failure to act was deliberate indifference to Plaintiff's serious medical need; (3) that Plaintiff followed the grievance procedure which provided Jividen with notice of

4

Plaintiff's serious medical need and defective brace and boots, but that Jividen was deliberately indifferent to Plaintiff's medical need; and (4) that Hanger improperly constructed Plaintiff's orthopedic boots and brace, which were known to be defective from the date of delivery to Plaintiff, but which were never properly repaired by Hanger.  ECF No. 36.

Three separate replies on April 8, 2021, April 14, 2021, and April 15, 2021, by the Administrative Defendants, Beane, Deem, Doe and Wexford, and Hanger.  ECF Nos. 37, 38, 39.  The Administrative Defendants argue that Plaintiff failed to adequately plead his claims as to their supervisory liability, failed to state a claim upon which relief may be granted, and that they are protected by qualified and sovereign immunity.  ECF No. 37.  In their reply, Defendants Wexford, Beane, Deem and Richardson argue that Plaintiff "still failed to set forth a sufficient factual predicate to establish. . . deliberate indifferen[ce]." ECF No. 38 at 1.  Further, as to Deem and Richardson, Defendants argue that Plaintiff fails to establish that: (1) it was medically necessary to transport him from prison to Hanger for repair to his boots and brace; (2) that those medical devices were insufficiently examined upon receipt; (3) that the deprivation of medical care was sufficiently serious; (4) that Deem or Richardson had actual knowledge that Plaintiff's medical devices were defective or broken; and (5) that Plaintiff failed to exhaust his administrative remedies with regard to Deem or Richardson.  Id. at 2 – 5.  As to Beane, Defendants argue that referral to a medical specialist or outside treatment facility is a discretionary decision, which in a non-emergent situation does not amount to deliberate indifference.  Id. at 6.  Third, as to Wexford, Defendants argue that Wexford is entitled to be dismissed because it is a private entity, which "can only be held liable under § 1983 only when an official policy or custom

of the corporation causes the alleged deprivation of rights."  Id. at 7.  In its reply, Hanger

reiterates the arguments raised in its motion to dismiss that Plaintiff failed to comply with

the notice requirements of West Virginia MPLA.  ECF No. 38 at 1 – 3.  Further, Hanger

argues that Plaintiff fails to demonstrate that Hanger had an official policy or custom which

caused the alleged deprivation of rights.  Id. at 3 – 4.

On May 3, 2021, Plaintiff filed a reply to two of the three defense motions [ECF Nos.

38, 39] to dismiss.  ECF No. 41.  Hanger filed a motion to strike Plaintiff's reply on May 7,

2021, arguing that Plaintiff's reply [ECF No. 41], filed after his response [ECF No. 36] to

the motions to dismiss, constituted a surreply which is prohibited by Local Rule of Prisoner

Litigation Procedure 11(d).  ECF No. 42 at 1.  Plaintiff filed a response to the motion to

strike on June 14, 2021.  ECF No. 43.  Hanger filed a reply to Plaintiff's response on June

21, 2021.  ECF No. 44.

### III.  LEGAL STANDARD

### A.     Pro Se Litigants

Because Plaintiff is a prisoner seeking redress from a governmental entity or

employee, the Court must review the complaint to determine whether it is frivolous or

malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial

review of certain suits brought by prisoners and must dismiss a case at any time if the

Court determines that the complaint is frivolous, malicious, fails to state a claim upon

which relief can be granted, or seeks monetary relief against a defendant who is immune

from such relief.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404

U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit

either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by

statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[4] is designed largely to discourage the filing
> of, and waste of judicial and private resources upon, baseless
> lawsuits that paying litigants generally do not initiate because
> of the costs of bringing suit and because of the threat of
> sanctions for bringing vexatious suits under Federal Rule of
> Civil Procedure 11. To this end, the statute accords judges
> not only the authority to dismiss a claim based on an
> indisputably meritless legal theory, but also the unusual
> power to pierce the veil of the complaint's factual allegations
> and dismiss those claims whose factual contentions are
> clearly baseless. Examples of the former class are claims
> against which it is clear that the defendants are immune from
> suit. . .

490 U.S. at 327.

### B.      § 1983 Claims

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against
> "[e]very person who, under color of any statute ... of any State
> ... subjects, or causes to be subjected, any citizen ... to the
> deprivation of any rights, privileges, or immunities secured by
> the Constitution and laws...." The purpose of § 1983 is to deter
> state actors from using the badge of their authority to deprive
> individuals of their federally guaranteed rights and to provide
> relief    to    victims    if    such    deterrence    fails.

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257

(1978).  In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated

what a plaintiff must allege to sustain a civil rights action:

---

[4]   The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

Gomez, 446 U.S. at 640.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." Ziglar v. Abassi, 137 S.Ct. 1843, 1860 (2017).

In Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit:

> set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

(internal citations omitted). The Court further explained that, "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, supra, citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

### C.  Motions to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570.  In

Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV.  ANALYSIS

### A.      Failure to State a Claim as to Maston and Jividen

Plaintiff fails to allege that either of the Administrative Defendants, Maston or Jividen, "through the official's own individual actions, has violated the Constitution," as required by Iqbal.  To the extent that Plaintiff alleges that Maston and Jividen are responsible for the actions of subordinate officials at St Marys Correctional Center, pursuant to Iqbal, individuals with supervisory responsibility are immune from liability from allegations that subordinate officials violated Plaintiff's civil rights.

The two Administrative Defendants, neither of whom Plaintiff alleges had any contact with him directly, had, at most, only supervisory responsibility for acts of their subordinates who had contact with Plaintiff.  However, "Government officials may not be held liable for the unconstitutional conduct of their subordinates."  Ashcroft v. Iqbal, supra, 556 U.S. at 676.

To the extent that Plaintiff alleges that Maston, the warden at St Marys, possessed personal knowledge of the problems with Plaintiff's medical devices, he still fails to state a claim upon which relief can be granted.  When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible.  Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1133 (4th Cir. 1982) (abrogated on other grounds by County of Riverside v. McLaughlin, 500 U.S. 44 (1991)).

Plaintiff fails to state how the Administrative Defendants violated his civil rights, or how their actions violated any law or the Constitution, which showings are required to satisfy the first element of the Shaw v. Stroud test.  "To satisfy the requirements of the first

element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, 13 F.3d at 799, citing Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). "A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses," however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

Additionally, as noted above, vicarious liability under the theory of respondeat superior is inapplicable to § 1983 actions.   Section 1983 claims are brought against individual state actors for their own acts.   Ashcroft v. Iqbal, supra, 556 U.S. at 676. However, Plaintiff has failed to articulate any violation of his Constitutional rights by Maston or Jividen.   Further, Plaintiff failed to allege that those named supervisory officials personally or in their individual capacities took any action which violated his Constitutional rights.  Accordingly, the Court finds the Administrative Defendants are entitled to qualified immunity against Plaintiff's claims that they should be liable as the supervisors of subordinates who he claims violated his rights.  Consistent with the holdings of the United States Supreme Court, it is clear that the Plaintiff fails to present a claim upon which relief can be granted as relates to Defendants.  Because Plaintiff can prove no set of facts which would entitle him to relief, he fails to state a claim upon which relief may be granted, and his complaint should be dismissed with prejudice as to Maston and Jividen.

Moreover, in reviewing claims of medical care, supervisors are  entitled  to  rely

on the judgment of the medical staff as to the course of treatment prescribed.  See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).  Thus, even assuming Maston and Jividen, supervisory Defendants, had notice of Plaintiff's administrative grievance regarding his medical needs, that notice does not rise to the level of personal involvement for liability in this suit.  Further, to the extent that Maston and Jividen properly relied on any professional judgment of trained medical personnel regarding Plaintiff's medical needs, that reliance was proper based on the holding of Miltier, and neither of the Administrator Defendants may be held liable under § 1983 for that reliance.

Finally, to the extent that Plaintiff asserts claims against Maston and Jividen in their official capacities, they are not liable under § 1983.  The Supreme Court has long recognized that such state officials are immune from liability under § 1983:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citations omitted). Accordingly, even if the Court were to consider Plaintiff's claims against Maston and

Jividen, as being asserted against those Defendants in their official capacity, Plaintiff has failed to state a claim upon which relief may be granted.

> ### B.     Failure to State a Claim Against Beane, Deem and Richardson

Plaintiff appears to allege that Beane, Deem and Richardson were directly responsible for his lack of desired medical care.  According to Plaintiff, Beane was Plaintiff's physician at St Marys who "ordered new boots and brace" for Plaintiff, and who repeatedly saw and treated Plaintiff.  ECF Nos. 1 at 2, 1-1 at 7 – 13.  Plaintiff also complains that although Beane sent other inmates to outside doctors during COVID-19 quarantine, Beane did not do the same for Plaintiff.  Id. at 8.

Further, according to Plaintiff, Deem, St Marys' Health Services Administrator, examined and photographed the condition of Plaintiff's boots and brace but did not provide Plaintiff with repaired medical equipment.  Id.  In one of the exhibits attached to his complaint, a response to grievance 20-SMCCJ-75-5-48, officials documented that Deem was contacted by staff and confirmed that the "shoe and brace are ready but [Plaintiff] will not be sent out to get it fitted until the restrictions are lifted from the [COVID-19] virus."  ECF No. 1-1 at 2.

Finally, according to Plaintiff, nurse Marie Doe (Richardson)[5] gave him his new boots and brace and told him "if there was anything wrong with them that they would not send me out to get them fixed."  Id. at 3 – 4.  Later, when Richardson provided Plaintiff with his new boots and brace, she requested he try them on and walk around in them to ensure they fit properly, at which time Plaintiff stated they did.  ECF No. 1-1 at 9.

---

[5]  As stated in n.2 above, these claims against Richardson were asserted in the section of the Court-approved form used to identify parties.  Plaintiff did not assert a claim against Richardson in the section of the Court-approved form to assert the statement of claim.  ECF No. 1 at 7.

To state a claim for direct liability for an Eighth Amendment violation for ineffective medical assistance, Plaintiff must show that Defendants acted with deliberate indifference to his serious medical needs.   Further, Plaintiff must name the state actors whom he claims injured him.   In order to state a cognizable civil rights claim related to medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976).

A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994) (citing Estelle).   To be held liable for inhumane conditions of confinement under the Eighth Amendment, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.   A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent."  Id. at 844.

In medical needs cases, the Farmer test requires Plaintiff to demonstrate officials' deliberate indifference to a serious medical need that has either "been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).   See Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987) cert. denied, 486 U.S. 1006 (1988).

First, it does not appear that Plaintiff has demonstrated that he has sufficiently

serious medical need.  Application of the <u>Farmer</u> test to Plaintiff's medical condition does not demonstrate that he is entitled to any relief, because he does not meet the first prong of the test, that he has objectively sufficiently serious condition.  A serious medical need is one that has either been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  Serious medical conditions are those recognized to affect an essential life function.  <u>Brice v. Virginia Beach Correctional Center</u>, 58 F. 3d 101 (4th Cir. 1995) (A broken jaw was recognized by the parties as a serious medical condition); <u>Webb v. Prison Health Services,</u> 1997 WL 298403 (D. Kansas May 7, 1997) (Carpal tunnel syndrome and a rotator cuff injury were not serious medical conditions); <u>Veloz v. New York</u>, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999) (A foot condition involving a fracture fragment, bone cyst and degenerative arthritis which plaintiff claimed caused problems walking, pain and cramping, was not sufficiently serious).  The medical issues of which the Plaintiff complains do not rise to the level of a subjectively sufficient medical condition.

Regardless of whether Plaintiff's medical condition was serious, he still fails to state a claim against Beane, Deem or Richardson.  As to Plaintiff's claims against Beane, it is clear that Plaintiff is entitled to health care, but he is not entitled to the health care of his choice.  The Fourth Circuit previously explained in <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995), that, " '[b]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on a deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.' "  Citing <u>Hudson v. McMillian,</u> 503 U.S. 1, at 9 (quoting *Estelle,* 429 U.S. at 104)."  71 F.3d at 166.  "[P]risoners do not have a

constitutional right 'to the treatment of his or her choice,' . . . and '[m]ere disagreement as to the proper medical treatment' does not constitute deliberate indifference."  King v. United States, 536 Fed. Appx. 358, 363 (4th Cir. 2013) (quoting Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).  "An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim."  Jackson v. Sampson, 536 Fed. Appx. 356 (4th Cir. 2013), citing Russell v. Shaffer, 528 F.2d 318, 319 (4th Cir. 1975).  Based on the holding of King, Plaintiff is not entitled to the treatment of his choice, thus his request to be seen by another medical provider does not support his Eighth Amendment claim against Beane.

Further, as to Plaintiff's claims against Deem and Richardson, he also fails to state a claim upon which relief may be granted.  The Fourth Circuit has held that a plaintiff can make a prima facie case of deliberate indifference "by showing 'that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it."  Cox v. Quinn, 828 F.3d 227, 236 (4th Cir. 2016) (internal citations omitted).  Further, the Fourth Circuit has held that, "In the context of a claim related to the denial of medical treatment, a defendant 'acts with deliberate indifference if he had actual knowledge of the [plaintiff's] serious medical needs and the related risks, but nevertheless disregarded them.'"  Gordon v. Schilling, 937 F.3d 348, 357 (4th Cir. 2019) (quoting DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018).

Deem argues that Plaintiff "admits that Ms. Deem took pictures of his boot and brace and sent the photographs to Hanger Orthopedic and was communicating with them

17

about the same."   ECF No. 23 at 10, citing to ECF No. 1.1, Ex. 4 at 12.   Despite this concession, Plaintiff contends that Deem failed to provide him proper medical care. Plaintiff contends that despite filing two grievances about the lack of medical care, Deem still denied him the necessary care.   However, the documents attached to his complaint instead demonstrate that Deem provided medical assistance to Plaintiff.

In the first grievance, number 20-DMCCJ-75-5-48, Plaintiff stated he wanted, "For someone to contact Hanger to get my brace and shoes that were ordered in February." ECF No. 1-1 at 1.   The single page hand-written attachment to the grievance does not mention Deem, but refers to Beane and Hanger repeatedly.   ECF No. 1-1 at 5.   On April 10, 2020, in response to that grievance, a staff member of St Marys prepared a memo which states, "I contacted Carla Deem at medical.   The shoe and brace are ready but you will not be sent out to get it fitted until the restrictions are lifted from the [COVID-19] virus." ECF No. 1-1.   The second grievance number 20-SMCC-76-1-87, filed July 8, 2020, states that Plaintiff wanted, "To be seen by another qualified Dr. for my leg and brace."   Id. at 4. Deem prepared a response on July 8, 2020, which states in full:

> This is in answer to the grievance received in my office July 8, 2020.   You were taken out to Hanger and fitted for a brace/shoe on 2/24/2020.   There were two calls to see about getting the brace/shoe and Hanger wanted you to return to try it on there in April 2020 but no outside appointments were being made at that time. By early June they decided you did not have to return but it could be picked up instead and it was delivered to you on 6/10/2020.   You signed a patient authorization stating you are responsible for any loss, misuse or abuse of the brace that day.   You told Marie, that gave you the brace, that it fit fine, you were told that only Hanger can do any repairs to the brace.   I spoke with David Ray in maintenance and he states you took the brace to him last week and he did notice that some of the screws were loose and that it only had a ball bearing in it not any springs.   He did tighten the screws.   You are to let medical know of any issues

> with the brace/shoe, not maintenance.   Any more questions
> or concerns please submit an HSR.

ECF No. 1-1 at 6.   Neither grievance, nor the allegations in the complaint itself allege specific wrongdoing by Deem.   Based on these actions by Deem, which are asserted by Plaintiff, Deem argues that Plaintiff has failed to plead a factual predicate necessary to establish a deliberate indifference claim against Deem.

Plaintiff's failure to adequately plead his claims merits dismissal without prejudice pursuant to Twombly, which requires that the factual allegations must be plausible on their face and be based on cognizable legal authority.   Plaintiff's claims against Deem are not plausible on their face.   Plaintiff concedes that Deem provided him with services. Plaintiff does not claim that Deem personally prevented him from receiving his brace or boots.   Rather, he complains that Deem did not provide adequate remedial services after he received defective boots and brace.   However, his own pleading contradicts those claims.   Even when liberally construing Plaintiff's allegations, he fails to assert any claims that Deem, while acting under the authority or color of state law subjected, or caused him to be subjected to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.   Accordingly, Deem should be dismissed without prejudice based on Plaintiff's failure to state a claim.

As to Plaintiff's claims against Richardson, Plaintiff again fails to state a claim upon which relief may be granted.   Richardson argues that Plaintiff did not allege that Richardson was deliberately indifferent to his medical needs, refused to provide him with treatment, or refused to provide him with assistance.   Accordingly, Richardson asserts that Plaintiff failed to plead a factual predicate necessary to establish a deliberate indifference claim against her.

Plaintiff's claims against Richardson are limited.   Although Plaintiff asserts five claims in his complaint, there is no claim asserted against Richardson in the Court-approved form.  ECF No. 1 at 7 – 8.  As noted above, in the section of the Court-approved form to identify parties Plaintiff asserted that Richardson was the "nurse who gave me new boots and brace and told me if there was anything wrong with them that they would not send me out to get them fixed."  Id. at 3 – 4.  The most specific claims against Richardson were in the attachment to the Court-approved form, where Plaintiff asserts that on June 10, 2020:

> Nurse Marie [Richardson] came and said for me to follow her. [She was the] same nurse who had told me earlier that I had to be fitted for new brace.  We went into examination room where she said there are you boots and brace. . . Try them on to see if they fit.  Which I did.  She then said walk around in them, which I did.  Then she said, do they fit?  I said yes.  She then picked up my old boots and brace, I told her not to throw them away.  I signed a patient authorization form for the boots.

ECF No 1-1 at 9.  Further, neither grievances filed by Plaintiff allege specific wrongdoing by Richardson.   Rather, the allegations in the attachment to the complaint are that Richardson provided Plaintiff with his brace and boots, requested that he try the brace and boots on for fit and utility, and that Plaintiff advised Richardson that the brace and boots fit him.   Richardson argues that Plaintiff has failed to plead a factual predicate necessary to establish a deliberate indifference claim against her.

Plaintiff's failure to adequately plead his claims merits dismissal without prejudice pursuant to Twombly, which requires that the factual allegations must be plausible on their face and be based on cognizable legal authority.   Plaintiff's claims against Richardson are not plausible on their face.  Plaintiff concedes that Richardson provided him with services.  Plaintiff does not claim that Richardson personally prevented him from

receiving his brace or boots.  Rather, he contends the opposite: that Richardson gave him the boots and brace and ensured they fit and were adequate to his needs.  Even when liberally construing Plaintiff's allegations, he fails to assert any claims that Richardson, while acting under the authority or color of state law subjected, or caused him to be subjected to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.  Accordingly, Richardson should be dismissed without prejudice based on Plaintiff's failure to state a claim.

### C.    Failure to State a Claim as to Wexford

Plaintiff asserts his § 1983 claim against Wexford for deliberate indifference to his serious medical needs.  ECF No. 1 at 8.  Wexford asserts, among other defenses, that it is not liable for a § 1983 claim because it is a private entity, not a "person" for purposes of § 1983.  ECF No. 23 at 12 – 13.

In West v. Atkins, 487 U.S. 42, 54 (1988), the Supreme Court held that the "Respondent, as a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury. Such conduct is fairly attributable to the State."  In West, the Supreme Court further held that:

> Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West: the State delegated that function to respondent [doctor] Atkins; and respondent voluntarily assumed that obligation by contract.

487 U.S. at 56.  The fact that Wexford is a private entity which was contracted to provide medical care does not in itself eliminate liability based on the holding of West.  However,

"private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient."  Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 616 (4th Cir. 2009).  However, Plaintiff has failed to demonstrate how the State has dominated the actions of Wexford, or that Wexford was following an official policy which caused the deprivation of rights.  Either showing could result in liability for Wexford under § 1983.

"[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 L. Ed. 2d 611 (1978).  Plaintiff has not demonstrated that Wexford either adopted a policy or acted in conformity with an official policy which resulted in a violation of Plaintiff's rights.

Moreover, Wexford is not a "person" for purposes of § 1983.  Wexford filed a disclosure statement that it is a non-governmental corporate party, which is a subsidiary of parent The Bantry Group Corporation.  ECF No. 30.  Wexford employed both Beane and Deem, named Defendants whose liability is addressed above.  But Wexford, as a private entity operating outside the control of the state, and not acting in conformity with any state policy, cannot itself be liable under § 1983.

Further, although Plaintiff makes specific, but inadequate, allegations against Wexford's employees, Plaintiff makes no specific allegations against Wexford itself.  ECF No. 1 at 8.  Plaintiff names Wexford in the caption of his complaint, fails to list Wexford as a party in Section II.B. of the Court-approved complaint form, then asserts the following

claim against Wexford, "Wexford Health Resources: Deliberate indifferent [sic] to a serious medical need. Which cause pain and suffering."  Id. at 1, 1 – 4, 8.  In the section to include supporting facts, Plaintiff stated, "See attached grievances Nos. 48 and 87." Id. at 8.  In the attached exhibit 20-DMCCJ-75-5-48, a grievance filed at St Marys, Plaintiff stated he wanted, "For someone to contact Hanger to get my brace and shoes that were ordered in February."  ECF No. 1-1 at 1.  In the attached exhibit 20-SMCC-76-1-87, another grievance filed at St Marys, Plaintiff stated he wanted, "To be seen by another qualified Dr. for my leg and brace."  Id. at 4.  Neither grievance, nor the allegations in the complaint itself allege wrongdoing by Wexford.  The complaint does not make any allegations pertaining to policies or customs of Wexford.  Rather, the complaint and attachments show that Plaintiff was provided continuing medical care and services by employees of Wexford.  Plaintiff fails to show any corporate action by Wexford which violated his rights.  It is clear that Plaintiff failed in either the complaint or in the attachments to state a claim against Wexford.

Because "only those questions which are squarely presented to a court may properly be addressed," this Court may not construct Plaintiff's arguments for him.  Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990).  Even when liberally construing Plaintiff's allegations, he fails to assert any claims that the Wexford while acting under the authority or color of state law subjected, or caused him to be subjected to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.  Accordingly, Plaintiff fails to state a claim against Wexford and Wexford should be dismissed without prejudice.

###### D.      Failure to State a Claim as to Hanger

Plaintiff's claims as to Hanger are also without merit.  Plaintiff asserts that Hanger acted with deliberate indifference to his serious medical needs by failing to act after being informed by Deem that Plaintiff's boot was defective.  ECF No. 1 at 8.  However, Hanger, asserts that Plaintiff both failed to state a claim upon which relief may be granted and failed to comply with the notice requirements of the West Virginia Medical Professional Liability Act prior to filing suit.  ECF No. 25.

Hanger filed a disclosure statement that it is a non-governmental corporate party, which is a subsidiary of parent Hanger, Inc.  ECF No. 26.  Hanger asserts that it is not a person for purposes of § 1983, and thus is not liable under the statute.  ECF No. 25 at 8.  Hanger states that it "merely provides occasional prosthetics and orthotics services to prison inmates, along with the services it provides to individuals who are not incarcerated."  Id.

Hanger concedes that a private entity can be considered a person for purposes of § 1983 in limited circumstances when an official policy or custom of the corporation causes the alleged deprivation of federal rights.   Id. at 9 (citing Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999) (holding that Monell and its progeny apply equally to a private corporation that employs special police officers, and that "a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights.")

The complaint does not make any allegations pertaining to policies or customs of Hanger.  Accordingly, because this Court may not construct Plaintiff's arguments for him, the Court cannot address whether Hanger acted according to a policy or custom of the

company.  Even when liberally construing Plaintiff's allegations, he fails to assert any claims that the Hanger while acting under the authority or color of state law subjected, or caused him to be subjected to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.  Accordingly, Plaintiff fails to state a claim against Hanger and Hanger should be dismissed without prejudice.

## V.  RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDED** that Petitioner's section 1983 second amended complaint [ECF No. 1] be **DENIED and DISMISSED WITH PREJUDICE** as to Maston and Jividen.  It is also **RECOMMENDED** that Petitioner's complaint be **DISMISSED WITHOUT PREJUDICE** as to Beane, Deem, Doe (Richardson), Wexford, and Hanger.

It is further **RECOMMENDED** that Defendants' Motions to Dismiss [ECF Nos. 22, 24, 32] be **GRANTED** and that Hanger's motion to strike [ECF No. 42] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the**

**Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:      July 6, 2021

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE